## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LEEDRUE HURT,

       Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

Civil Action No. 3:15-cv-03287

**MEMORANDUM
AND ORDER**

**Sheridan, U.S.D.J.**

This matter is before the Court on the appeal of a determination by the Social Security Administration decision that Plaintiff, Leedrue Hurt, was not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) under Titles II and XIV of the Social Security Act (Act). 42 U.S.C. §§ 401-434, 1381-1383f for the period between January 17, 2006 and November 18, 2008. After reviewing the administrative record, this Court finds that the ALJ's decision is not supported by substantial evidence and vacates the Commissioner's decision to deny Plaintiff disability benefits.

I.

### Overview

The procedural history for this case is lengthy, but suffice it to say it has been remanded on several occasions for additional findings of facts.

Plaintiff initially applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on March 28, 2006 alleging disability as of January 17, 2006 due to a medial meniscus tear in his right knee, and hearing loss (R. 211-18, 234). At the time of this

initial application, Plaintiff was 47 years old which, for purposes of the Social Security

Administration regulations, placed Plaintiff in the category of "younger individual." Plaintiff

requested a hearing before an Administrative Law Judge, and on August 20, 2009, a hearing was

held before the Hon. Michael Lissek, ALJ and a vocational expert testified. (R. 60-86). On

August 31, 2009 the ALJ denied Plaintiff's application for benefits, but on October 27, 2010, the

Appeals Counsel granted Plaintiff's request for review, and the ALJ's decision was remanded to

ALJ Lissek. (R. 103-06).

On March 1, 2001, ALJ Lissek issued a partially favorable decision, finding that Plaintiff

was disabled and entitled to benefits as of November 18, 2008, the date on which Plaintiff turned

50. The Social Security Administration categorizes people who are aged 50-54 as "closely

approaching advanced age."[1]

On March 12, 2012, on the Commissioner's own motion, this Court remanded Plaintiff's

claim for further administrative proceedings. On June 11, 2012, the Appeals Council affirmed

the ALJ's decision finding that Plaintiff was disabled beginning November 18, 2008, and

remanded the decision to a new ALJ for administrative proceedings. On December 12, 2012, the

ALJ Dennis O'Leary issued a decision that from January 17, 2006 through November 18, 2008,

Plaintiff was capable of performing a number of sedentary jobs[2] that exist in the national

---

[1] If a claimant is a **younger person (under age 50)**, age generally does not seriously affect his or her ability to adjust to other work. However, in some circumstances, consider that people age 45-49 are more limited in their ability to adjust to other work than people who have not attained age 45. 20 C.F.R. §§ 404.1563.

[2] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

economy, and that Plaintiff was not disabled during that time period. On April 5, 2013, the

Appeals Council once again remanded Plaintiff's case for further evaluation, directing the ALJ to

evaluate the treating and non-treating source opinions, evaluate Plaintiff's subjective complaints;

obtain additional evidence with regard to Plaintiff's obesity, bilateral hearing loss, knee

impairment, and ability to concentrate; and further consider Plaintiff's maximum residual

functional capacity (R. 532-34).

On remand to a third ALJ, Leonard Olarsch, a hearing was held and a vocational expert

testified. On August 28, 2013, ALJ Olarsch opined that from January 17, 2006 to November 8,

2008, Plaintiff was capable of performing a number of sedentary jobs that exist in the national

economy, and that Plaintiff was not disabled during that time period. (R. 405-408).

## Issue

The issue currently before this Court is whether the ALJ's decision of August 28, 2013

that Plaintiff is not entitled to a period of Disability Insurance Benefits for the time period

January 17, 2006 to November 8, 2008 is based on substantial evidence. The evidence in the

record from this time period is discussed below.

II.

## Statement of Facts

Plaintiff has a high school education up to the 11th grade. Plaintiff has past work

experience as a garbage collector/driver and as a delivery helper. He also has some past work

experience as a custodian at a vocational school in Woodbridge. (R. 235, 240).

In an April 25, 2006 Adult Function Report, Plaintiff described his day from the time he

arises and until his bedtime as "I can't get up because I am in so much pain. When I do get up I

have to use my crutches." He stated that he does a little housework, but that his son helps him a

3

great deal with the chores. He stated that he lays around a lot and elevates his legs because of the pain. He stated that he is in a lot of pain when he tries to sleep and it is hard to sleep on his back and sides because of the pain. It's hard for him to put on his pants, he can't take a bath because he can't get up, and he has difficulty using the toilet because it is hard to bend his knees. (R. 249). He reported that he cooks about three times a week but it takes him two hours because he has to sit down and rest. He stated that he doesn't drive because of the pain. When he goes to the grocery store he uses one of the motorized carts to do his shopping. Socially he watches television, plays cards, watches sports. He talks on the phone, and plays around on the computer. He doesn't go anywhere except the food store and the doctor's office. (R. 252). He stated that he can lift about twenty pounds and that he can walk about half a block before stopping. Depending on the amount of pain he is having, he can get up and walk for about 15 minutes. He stated that he can follow written and spoken instructions. (R. 253). He works well with authority figures. He uses motorized carts, a knee brace, a cane and crutches every day for the past two years.

In a December 14, 2006 Adult Function Report, Hurt described that during the day he cooks, cleans the house, washes clothes, and helps his son with homework. (R. 261). He bathes his son and readies his clothes.  He cares for a walks his dog.  (R. 262). When cooking he prepares complete meals; but it takes half an hour to make a sandwich. He stated that he does not drive because he does not own a car. He shops for food, clothes and household items, and it takes him about two hours to do so. He is able to pay bills and count money. When asked to describe any changes in social activities since his injury, he stated "walking-squatting."

## **Medical Records**

Since the issue currently before this Court is whether Plaintiff is entitled to benefits for the time period between January 17, 2006 to November 8, 2008, the evidence in the record from this time period is discussed below.

Diagnostic Reports

A June 17, 2006 MRI of Plaintiff's right knee found: 1) partial absence of the body and posterior horn of the medial meniscus with thinning of the articular cartilage; and 2) joint effusion and small popliteal cyst. (R. 307).

On September 14, 2007, Plaintiff had an x-ray of his right knee. The impression was minimal degenerative arthritis changes and slight chondrocalcinosis (calcium salts found in the cartilage joints). (R. 334). An x-ray of the left knee on the same day found no abnormality. (R. 335).

Treating Physician Reports and Notes

**Frances Wu, M.D.**

Plaintiff is treated by Frances Wu, M.D. of Somerset Family Practice for knee pain and complaints of hearing loss.

At a January 17, 2006 visit with Dr. Wu, Plaintiff told the doctor that he had injured his knee at the age of 16, and then subsequently he re-injured it while lifting a refrigerator for his moving job a few years ago.  He had an MRI of his knee while in prison, but he refused surgery at that time. He stated that he did not have enough money to buy a brace, but was able to afford a cane. He could only walk to cook lunch for his son. It hurts when he walked to the park outside

his house. He stated that Ultram, a prescribed drug, worked only if the dose was at least 150 mg at a time, and that would last most of the day. On examination, Plaintiff's lower right extremity showed tenderness on weight bearing, but had a full range of motion and no effusion (excess accumulation of fluid). (Rr. 371). Dr. Wu's assessment was tear of the medial meniscus. She noted that Plaintiff was still severely limited in mobility due to pain and was using cane.

On January 17, 2006, Dr. Wu opined in a letter on behalf of Plaintiff, and in support of Plaintiff's application for benefits, that Plaintiff was unable to ambulate without pain, and thus could not participate in training or employment for at least one year. (R. 368).

At a May 16, 2006 follow up visit with Dr. Wu, Plaintiff's weight was 199 pounds with a body mass index of 30.7. Plaintiff reported that his knees hurt daily, preventing him from going to the park with his son, and that he is unable to cook for more than a few minutes because of pain on standing. He would awaken at night if he turned in bed. Hurt stated that the prescription drug, Tramadol, seemed to relieve pain only for one hour and then the pain would return. When it's raining, the right knee would hurt all day.   He reported having surgery on it years ago, and it felt better for a time, but that three years ago it worsened, and he cannot work. He also reported that he can't afford batteries for his hearing aid. He complained of decreased hearing. With the exception of his right knee, the examination was essentially normal. (R. 321). He was only able to extend his right knee to about 80 degrees. His left knee had full range of motion but there was clicking in the mid-range. He was prescribed Tylenol with codeine to augment the Tramadol, which Plaintiff stated was not completely alleviating the pain.

On May 18, 2006, Dr. Wu completed a Medical Source Statement on behalf of Plaintiff. (Exhibit 3F). She reported that she had treated him approximately one to two times per year since 2001 (R. 304-06). Dr. Wu indicated that Plaintiff's left knee hurt due to overuse to protect

his right knee. Her findings included limited right knee flexion to only 80 degrees, due to pain (R. 304). She did not have copies of Plaintiff's MRI, but noted that he was referred for knee x-rays and an orthopedic evaluation. Plaintiff's diagnosis was post-traumatic arthritis of the knees, right worse than left. Dr. Wu concluded that Plaintiff would be able to lift ten pounds occasionally due to difficulty walking; stand and/or walk for less than two hours per day; had no limitation in sitting; but had a limited ability to use left foot controls consistently due to limited knee flexion. (R. 305).

On June 9, 2006 Dr. Wu reported in another letter in support of Plaintiff's disability that Plaintiff was treating for peptic ulcer disease, tear of the medial meniscus, hearing loss and unspecified arthritis. (R. 359). His medications included Habitrol, and Tylenol with codeine.

In June 2007, Dr. Wu indicated to Plaintiff that she could no longer treat him over the phone since she had not seen him since May 2006, one year earlier. (R. 348-49).

On June 27, 2007, Dr. Wu submitted a statement of Plaintiff's abilities to perform certain functions. At that time, she reported that she had treated Plaintiff annually since 2001, but had not seen him in the past year. She noted Plaintiff's history of right knee pain, and that Plaintiff stated that he is only able to walk about 20 feet before experiencing pain. He had limited flexion in his knee to 80 degrees. She referenced the July, 2006 MRI of the right knee where it was found that there was partial absence of the body and posterior horn of the medial meniscus with thinning of the articular cartilage and joint effusion and a small popliteal cyst. Dr. Wu diagnosed post-traumatic arthritis of the knee. With regard to Plaintiff's ability to perform work related activities, Dr. Wu opined that Plaintiff was limited in his ability to lift and carry up to 20 pounds; he is limited to standing/walking less than two hours per day. There was no limitation in Plaintiff's ability to push/pull or sit. (R. 326).

**Consultative Orthopedic Examination With Anju Rustagi, M.D.**

Plaintiff was examined by Anju Rustagi, M.D. of Somerset Medical Services for a consultative orthopedic examination.

A December 18, 2006 report of Anju Rustagi, M.D. found Plaintiff to be "a 49-year-old gentleman with a history of chronic severe pain in bilateral knees, right worse than left with functional limitation." (R. 313). At the time of the examination, he weighed 210 pounds. Plaintiff reported having surgery on his knee at the age of 17 for some cartilage damage. In the past two to three years he began to have more pain in his knees at the level of 8/10. He also reported left knee pain at a level of 6/10. In the right knee there is a history of swelling and redness. There is no history of locking in either knee. Plaintiff reported that the pain is worse when he is walking for more than five minutes and is improved with rest and medication. He reported wearing a right knee brace, and that he falls about once a month because of his knee. (R. 311). He was currently wearing hearing aids in both ears. He is treating his knee pain with Tramadol 50 mg six tablets per day as well as with Tylenol six times a day. Functionally, Plaintiff reported that he is independent in feeding, grooming, bathing, upper and lower body dressing, toileting, transfers, walking, and stairs, though he uses a cane and he has pain so it takes a long time. (R. 312).

Plaintiff was unable to walk heels and toes and unable to squat. His gait was very slow, with wide-based, significant antalgia to the right. On inspection there was mild deformity of the right knee. The left knee appears to have no deformity. There was no atrophy noted. Manual muscle testing bilateral legs throughout is 5/5, except in the right knee where extension was 4/5. Sensation was intact to light touch and pinprick in bilateral legs in all peripheral nerves and dermatomal distributions. Muscle strength reflexes appear to be symmetrical. Plantars are downgoing.

Examination of the left knee found no redness or feeling of warmth. The patellar tendon was nontender and the lateral patellar facet was tender, medial patellar facet is nontender. He was unable to do the Lachman's test on the left knee because he was unable to relax, and on stressing the knee at 0 and 50 degrees, MCL, LCL and joint capsule appear to be intact.

There was redness, warmth and effusion present in the right knee. Plaintiff did not allow examination of the right knee due to severe pain. (R. 312).

In an assessment of his use of a hand-held assistive device, Dr. Rustagi concluded that Plaintiff was able to walk at reasonable pace, used a cane for standing and walking, required a cane to lean for support and for balance, was able to walk two blocks with a cane and twenty feet without a cane, and had effective use of one extremity for carrying while using a cane. (R. 315).

On September 10, 2007 Plaintiff was again seen for an orthopedic consultative examination by Anju Rustagi, M.D. Plaintiff reported knee pain at a level of 8/10 which sometimes worsens to 10/10. He also reported lower back pain starting at the age of 24 that was a 5/10 in pain but could go up to a 10/10. The pain refers up to the middle back region. He also reported weakness in his legs. At the time of this examination, Plaintiff was treating his pain with 20 Advil tablets per day. Functionally, it was found that Plaintiff was independent in feeding, grooming, bathing, upper and lower body dressing and toileting, transfers, walking and stairs. He reported taking longer to do these activities due to pain. (R. 329).

At this examination, Plaintiff could walk heel-to-toe with good swing phase and foot clearance. There was no antalgia. Plaintiff was able to walk for a few steps on his toes and his heels. He was unable to squat. On inspection, there is no obvious atrophy or deformity noted. Manual muscle testing bilaterally throughout the legs was 4/5. Sensation was intact to light touch and pinprick in bilateral legs, in all peripheral nerve and dermatomal distributions. Muscle

9

stretch reflexes were symmetrical. Straight leg raise was negative in the sitting and supine position. Bilateral hamstring and quadricep tightness was present. Palpation of the low back was nontender with no trigger points, or para vertebral spasm. The patient has significant nonorganic sign positive for low back pain. (R. 329).

The examination of the bilateral knees found mild effusion and no redness or warmth present. Patellar facets were tender, medial and lateral. MCL, LCL and joint capsule appeared intact. Plaintiff was unable to perform Lachman's test because he was unable to reflex due to pain.

### Consultative Examination with Dr. Bagner After the Relevant Period Ending November 18, 2008

May 12, 2009 seen by Ronald Bagner, M.D. for an orthopedic consultative examination. His impression after examining Plaintiff was that Plaintiff has degenerative arthritis. He noted that Plaintiff walked with a cane and a right limp. He walked with difficulty and had marked difficulty positioning himself on the examination table. He was comfortable in the seated position during the interview. He found that the objective findings did not correlate with the Plaintiff's need for a cane. There was pain in movement in the knees, right greater than the left, but there was normal range of motion. (R. 376). In his Medical Source Statement of Ability to Do Work Related Activities, Dr. Bagner found that Plaintiff could frequently lift and carry between 20 and 30 pounds and occasionally lift and carry 21 to 50 pounds. He can sit for three hours at a time, and stand and walk for one hour at a time. In total for an 8-hour work day, it was Dr. Bagner's opinion that Plaintiff could sit for 5 hours and stand and walk for 2 hours. (R. 380). He did not believe that Plaintiff required a cane, despite Plaintiff's use of one. He further found that Plaintiff can reach, handle, finger, feel and push pull frequently with both hands. He can

occasionally use foot controls. It was advised that he never climb stairs or ladders, but that he can occasionally stoop, kneel or crouch. It was Dr. Bagner's further opinion that Plaintiff could shop, travel, ambulate without the use of crutches, prepare a simple meal, attend to hygiene, and handle and sort papers; but Plaintiff should not walk on uneven surfaces, take public transportation, or climb steps. (R. 384).

<u>Residual Functional Capacity Assessment – State Agency Medical Opinions</u>

**Dr. Park**

On July 29, 2007, Dr. Park reviewed the medical record and found that Plaintiff had a slow and wide based gait, able to walk at a reasonable pace, restricted to lifting twenty pounds, sit for six hours, and stand and walk for less than 2 hours (R. 328).

**Dr. Cirillo**

On October 25, 2007, a Physical Residual Capacity Assessment showed Plaintiff was limited to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of at least two hours in an 8-hour work day; sit about six hours in an 8-hour work day; push and/or pull (including operation of hand and/or foot controls) was unlimited; he can occasionally climb stairs, stoop, kneel and crawl, and never climb ladders. He was found to be unlimited in his ability to perform manipulative, visual, and communicative functions and had no environmental limitations. (R. 340).

<u>Hearing Examinations</u>

On November 16, 2006, Hurt's hearing capability was evaluated at HearRx in Somerset, New Jersey. The examiner found significant deterioration in hearing, acutely bilaterally, in comparison with a 2003 and 2004 examination wherein Plaintiff only required hearing aids in his left ear. It was the opinion of the examiner that this type of hearing loss often results in difficulty

with conversational speech, and increased difficulty in noise and distance. It was recommended that Mr. Hurt have hearing aids for both ears. (R. 294).

On August 30, 2009 Plaintiff underwent an audiological evaluation by Gerald Scott, M.D. of the Nasal and Sinus Center in Edison, New Jersey. (R. 373). The test results indicated severe to profound bilateral sensorineural loss of hearing from 250 - 8KHz. Speech reception thresholds agree essentially with pure tone findings, 65dB in the right ear and 70dB in the left ear. Speech discrimination results were poor, 44% in the right ear and 48% in the left ear. Dr. Scott noted that Plaintiff received two hearing aids under the Medicaid program three years ago and he is presently wearing an auditory amplifier that he purchased. Plaintiff reported that his right hearing aid is not working and that the left needs adjustment. Plaintiff did not have the two hearing aids with him so they could not be evaluated. Suggest hearing aid evaluation and recommendation with state disability approval. (R. 374).

Hearing before the Administrative Law Judge – Vocational Expert Testimony

Plaintiff appeared at a hearing before Leonard Olarsch, ALJ on August 7, 2013 and testified on his own behalf. A vocational expert also appeared and testified.

Plaintiff testified that he was 5'7" and weighed 210 at the time of the hearing. He stated that he had lost some weight since 2006 because of his knees, and that back in 2006 – 2008 he weighed approximately 240 pounds. He testified that Dr. Wu told him that he had arthritis in his knees. He testified that in 2006, Dr. Wu prescribed a cane for him and that he has been using it along with a knee brace since 2006. He stated that he has been prescribed hearing aids, and that they help but "very limited." At the time he stopped working, he was working doing a little bit of maintenance and working behind a recycling truck, as well as delivering appliances. At the time of the hearing he did not have a driver's license as it was suspended. He testified that Dr. Wu

prescribed him Tylenol with codeine for the pain in his knees, and that it made him drowsy to sit or stand. At present, she had prescribed him Percocet. The ALJ asked if the medications caused side effects, and the Plaintiff answered that it caused a little itching, a little dizziness and made him drowsy. (R. 473).

The ALJ next questioned the vocational expert in order to determine if Plaintiff was capable of performing any work that existed in the national economy during the relevant time period of January 17, 2006 through November 18, 2008. In doing so, the ALJ asked the expert to consider an individual matching Plaintiff's vocational profile, and which included the ability to perform a full range of sedentary work, with no exposure to dangerous machinery or unprotected heights, and which required the ability to hear others who are in close proximity. In addition, the person would be permitted to use a cane, perform, simple, routine and repetitive tasks and make only simple work related decisions. (R. 478). The vocational expert testified that such an individual would be able to perform the representative sedentary jobs of document preparer, eyeglass polisher, and table worker, which existed in significant numbers in the national economy (R. 481).

The vocational expert further clarified that the identified jobs involved sitting for at least six hours per day, and probably not, but potentially two hours of standing. The jobs could be performed sitting most of the work day, even in situations where an individual would be sitting for two, two-hour segments of work that comprised the morning and afternoon of an eight-hour workday (assuming a fifteen-minute break between the two, two-hour morning work sessions, a lunch break, and a fifteen-minute break between the two, two-hour afternoon work sessions). She explained that for the job of document preparer, there was a possibility that a worker may have to get up to retrieve an object or inform someone that he needs an object to continue working. (R.

488). The vocational expert also testified that an individual who was off task for ten percent of the workday could still perform the jobs that she had identified.

III.

## Legal Standard

A claimant is considered disabled under the Social Security Act if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which "has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A plaintiff will not be considered disabled unless he cannot perform his previous work and is unable, in light of his age, education, and work experience, to engage in any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); see *Sykes v. Apfel*, 228 F.3d. 259, 262 (3d Cir. 2000); *Burnett v. Comm'r of Soc. Sec. Admin*., 220 F.3d 112, 118 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). The Act requires an individualized determination of each plaintiff's disability based on evidence adduced at a hearing. *Sykes*, 228 F.3d at 262 (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)); see 42 U.S.C. § 405(b). The Act also grants authority to the Social Security Administration to enact regulations implementing these provisions. See *Heckler*, 461 U.S. at 466; *Sykes*, 228 F. 3d at 262.

The Social Security Administration has developed a five-step sequential process for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. First, the plaintiff must establish that he or she is not currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. See *Plummer*, 186 F.3d at 428 (citing *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)). In step two, he or she must establish that he suffers from a severe impairment. 20

C.F.R. § 404.1520(c). If plaintiff fails to demonstrate a severe impairment, disability must be denied.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*; *Burnett*, 220 F.3d at 118-20. If it does, the plaintiff is automatically disabled. 20 C.F.R. § 404.1520(d). But, the plaintiff will not be found disabled simply because he is unable to perform his previous work. In determining whether the plaintiff's impairments meet or equal any of the listed impairments, an ALJ must identify relevant listed impairments, discuss the evidence, and explain his reasoning. *Burnett*, 220 F.3d at 119-20. A conclusory statement of this step of the analysis is inadequate and is "beyond meaningful judicial review." *Id.* at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to steps four and five. *Plummer,* 186 F.3d at 428. In step four, the ALJ must consider whether the plaintiff "retains the residual functional capacity to perform [his or] her past relevant work." *Id.*; see also *Sykes*, 228 F.3d at 263; 20 C.F.R. § 404.1520(d). This step requires the ALJ to do three things: 1) assert specific findings of fact with regard to the plaintiff's residual functional capacity (RFC); 2) make findings with regard to the physical and mental demands of the plaintiff's past relevant work; and 3) compare the RFC to the past relevant work, and based on that comparison, determine whether the claimant is capable of performing the past relevant work. *Burnett*, 220 F.3d at 120.

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform. See 20 C.F.R. § 404.1520(g).

In demonstrating there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education, and work experience. 20 C.F.R. § 404, subpt. P, app. 2. However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments, "the government cannot satisfy its burden under the Act by reference to the grids alone, because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." *Sykes*, 228 F.3d at 269-70. Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. Id. at 270-71, 273-74; see also *Burnett*, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including testimony of a vocational expert.") If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.  20 C.F.R. § 404.1520(g).

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. 42 U.S.C. § 405(g). See *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). *Doak*, 790 F.2d 26 at 28. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla.  *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer,* 186 F.3d at 422. Likewise, the ALJ's decision is not

supported by substantial evidence where there is "competent evidence" to support the alternative and the ALJ does not "explicitly explain all the evidence" or "adequately explain his reasons for rejecting or discrediting competent evidence." *Sykes*, 228 F.3d at 266 n.9.

The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion. *Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); see also *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987).  Nevertheless, the district court's review is deferential to the ALJ's factual determinations. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (en banc) (stating district court is not "empowered to weigh the evidence or substitute its conclusions for those of the factfinder"). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.  But despite the deference due the Commissioner, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

Title II of the Social Security Act, 42 U.S.C. § 401, et seq. requires that the claimant provide objective medical evidence to substantiate and prove his or her claim of disability. See 20 CFR § 404.1529. Therefore, claimant must prove that his or her impairment is medically determinable and cannot be deemed disabled merely by subjective complaints such as pain. "A claimant's symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, will

not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); *Hartranft*, 181 F.3d at 362. In *Hartranft*, claimant's argument that the ALJ failed to consider his subjective findings were rejected where the ALJ made findings that claimant's claims of pain and other subjective symptoms were not consistent with the objective medical records found in the record or the claimant's own hearing testimony.

IV.

## **Analysis**

A. Plaintiff's Argument I: Substantial Evidence Does Not Support the ALJ's Residual Functional Capacity Determination of Unskilled, Sedentary Work

Plaintiff argues that substantial evidence does not support the ALJ's residual functional capacity determination for sedentary work. (Pl.'s Br. at 12-26). During the 34-month period in question the treating physician Dr. Wu checked a box on a medical report that stated Plaintiff could stand and/or walk "Less than two hours per day." (R. 326). Among the other options of boxes to check was "Up to 2 hours per day." (R. 326). The regulatory definition of a full range of sedentary work expounded upon in the Commissioner's Published Rulings states, "The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately two hours during an eight-hour work day." (SSR 96-9p). Plaintiff argues the ALJ's conclusion directly contradicts Dr. Wu's assessment. (Pl.'s Br. at 20). According to Dr. Wu's medical report Plaintiff was unable to satisfy the requirements of a full range of sedentary work. The ALJ, "after careful consideration of the entire record," found that Plaintiff had the residual functional capacity to perform sedentary work. (R. 421).

In his decision, the ALJ did not mention SSR 96-9p: "Policy Interpretation Ruling, Titles II and XVI: Determining Capability to do Other Work – Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work," which explicitly states the requirement of being able to stand and walk for approximately two hours during the work day. (Pl.'s Br. at 19). The ALJ found Plaintiff's symptoms to be consistent with sedentary work as described in 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p[3]. He also considered SSRs 96-2p, 96-5p, 96-6p, and 06-3p[4]. (R. 421). However, the ALJ did recognize Dr. Wu's assessment and chose to give it less weight: "Aside from reduced standing and walking to less than two hours a workday, the rest of Dr. Wu's 2007 medical source statement was also equivalent to a sedentary exertional ability. (Exhibit 10F)." (R. 423).

The ALJ gave great weight to Dr. Park's and Dr. Cirillo's opinions of Plaintiff's capacity for sedentary work. (R. 423). ALJ stated, "Dr. Park's and Dr. Cirillo's opinions of a sedentary exertional level are fully consistent with a finding of a residual functional capacity for sedentary work." (R. 423). However, Dr. Park also noted, in July 2007, residual functional capacity restricted to *standing and walking for less than 2hrs.* (Exhibit 11F). Dr. Park's assessment, therefore, also contradicts the full sedentary work requirement in SSR 96-9p.

Dr. Cirillo, on the other hand, checked a box indicating that Plaintiff could "Stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday." (Exhibit 13F). Dr. Cirillo's assessment, unlike Dr. Park's assessment, is consistent with a finding of a residual functional capacity for a full range of sedentary work. The ALJ never discussed the opposition of these two state doctor's findings.

---

[3] SSR 96-7p has since been superseded by SSR 16-3p effective March 28, 2016.
[4] SSRs 96-2p, 96-5p, 96-6p, and 06-3p were rescinded by Federal Register Notice.

SSR 96-9p, effective July 1996, explains the impact of a residual functional capacity assessment for less than a full range of sedentary work on an individual's ability to do other work. Namely, it reflects severe limitations, but does not necessarily equate with a decision of "disabled." Consideration is still given as to whether other work in the national economy exists for an individual to do, which may be provided by a Vocational Expert. The ALJ questioned Vocational Expert Tanya M. Edghill during a hearing referencing a hypothetical individual "limited to the full range of sedentary work." (R. 457, 479). Plaintiff argues that the ALJ's residual functional capacity assessment "betrays no knowledge or concern" with parameters of SSR 96-9p. (Pl's Br. at 20). However, the ALJ was cognizant of the two-hour threshold, as he discussed it at length in regard to Dr. Wu's notes and at the hearing with the Vocational Expert.

It is the ALJ's responsibility to make a residual functional capacity assessment, and he does so by considering all of the relevant medical and other evidence in the record. 20 CFR 404.1546(c), 416.946(c), 404.1545(a)(3), 416.945(a)(3). Generally, more weight is given to examining and treating physicians. 20 CFR 404.1527(1-2). How much weight is given depends on the length of the treatment relationship and the frequency of examination; and the nature and extent of the treatment relationship. 20 CFR 404.1527(2). The longer a physician has been treating a patient, the more weight is given. The more knowledge a physician has on a particular problem or specialty; the more weight is given. 20 CFR 404.1527(2)(i-ii).

Here, Dr. Frances Wu was a treating physician since 2001. She saw Plaintiff approximately one to two times per year. (R. 304-06). She was a family practitioner at Somerset Family Practice. Of all the medical personnel reviewing the Plaintiff, Dr. Wu had the longest treatment relationship. Drs. Park and Cirillo were state agency medical consultants, not examining or treating physicians. They reviewed the medical evidence and history from other

physicians, such as right knee MRI. (Def's Br. at 9). Dr. Rustagi was a treating physician at Somerset Medical Services and performed consultative orthopedic examinations in December 2006 and September 2007. Dr. Rustagi's examinations were silent on Plaintiff's ability to stand/walk for specific amounts of time. (R. 311-315; 329-335).

In determining the appropriate weight to give to a treating physician's opinion, an ALJ weighs the opinion against several factors, including, the consistency of the opinion with the record as a whole, and the degree to which an opinion is supported by relevant evidence. 20 CFR 404.1527(c)(2-4), (d), 416.927(c)(2-4), (d). "The opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). An ALJ may give treating physician opinions less weight when the opinions are conclusory or unsupported by medical evidence. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

In the instant case, the ALJ determined that Plaintiff had the residual functional capacity for unskilled sedentary work except limited to occupations that do not require exposure to dangerous machinery or unprotected heights. (R. 421). In addition, the ALJ placed further limitations including "auditory limitations to account for Plaintiff's hearing loss, the ability to use a cane, and only simple, routine, repetitive tasks involving simple work-related decisions and few workplace changes to account for any diminished concentration, persistence, or pace due to the side-effects of [pain] medication." (Def's Br. at 15).

The ALJ provided a number of reasons for the sedentary residual functional capacity determination. He found that Plaintiff's claims on intensity, persistence and limiting effects of

knee pain were not entirely credible.[5] (R. 421). The ALJ, as the finder of fact, is given great discretion in making credibility findings. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983) (providing that credibility determinations as to a claimant's testimony regarding his limitations are for the ALJ to make).

The ALJ relied heavily on objective physical findings from two consultations with Dr. Anju Rustagi whose overall impression on the first visit was, "This is a 49-year-old gentleman with a history of chronic severe pain in bilateral knees, right worse than the left with functional limitation." (R. 313). The MRI record in June 2006 for Plaintiff's right knee showed a partial absence of the body and posterior horn of the medical meniscus with thinning of the articular cartilage; and joint effusion. (R. 421). Dr. Rustagi found Plaintiff was able to walk for a few steps on his toes and his heels. (Exhibit 12F). The exams revealed "some tenderness and effusion, and some limitation in knee flexion due to pain, but otherwise no muscle atrophy, intact sensation, symmetrical reflexes, and full muscle strength" (Def's Br. at 17.) On the first visit, Dr. Rustagi found that Plaintiff could walk 2 blocks with his cane and 20 feet without it; on the second visit, that Plaintiff could walk half a block with his cane and half a block without it. (R. 315, 333).

While an ALJ may not base a decision upon his own interpretation of the significance of medical data, this does not prevent him from weighing medical reports against internal contradiction. *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3d Cir. 1992). As the Third Circuit noted, an ALJ need not undertake an exhaustive discussion of the record. *Knepp v. Apfel*, 204

---

[5] "Credibility" is no longer used in social security residual functional capacity assessments as per SSR 16-3p effective March 28, 2016.

F.3d 78, 83 (3d Cir. 2000). The written analysis of every piece of evidence in the record is not required, as long as the ALJ articulates his reasoning and bases it in the evidence. *Phillips v. Barnhart*, 91 F. App'x 775, 779 n.7 (3d Cir. 2004).

Here, the ALJ weighed the differing medical reports and decided to give less weight to Dr. Wu's treatment notes. Instead, he found that there was insufficient medical evidence to support the statement that Plaintiff was not capable of standing and walking for two hours total in a workday. (R. 423).

The ALJ found that Dr. Park's and Dr. Cirillo's opinions supported a finding of sedentary work and stated, "no grossly reduced limitation of standing walking to less than two hours is supported by any part of the record as outlined above." (R. 424). He, therefore, gave less weight to Dr. Wu's assertion of that limitation, and great weight to Dr. Park, but did not address Dr. Park's assessment that Plaintiff could "*stand and walk for less than 2 hours* (Tr. 328)." (Def's Br. at 9). Dr. Park's assessment is in agreement with Dr. Wu's assessment. As noted by the Third Circuit, "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible – the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d. Cir. 2005) (citation omitted). A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. *Morales*, 225 F.3d at 316.

As per SSR 96-9p, taking Dr. Park's assessment into account may have translated to a residual functional capacity assessment for less than a full range of sedentary work. By not addressing the discrepancy between Drs. Park and Cirillo's assessments the ALJ erred. That error may have changed his direction to the Vocational Expert. The recommended occupations

that Plaintiff could perform in the national economy, including Document Preparer, Eyeglass Polisher and Table Worker, cannot be assumed to be accurate either. "A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). At Step Five, the burden shifts to the Commissioner to show that the claimant can perform "other work." 20 CFR 416.920(g). Here, that burden was not satisfied.

B. Plaintiff's Argument II: The ALJ's Decision Did Not Adequately Address Plaintiff's Necessity for a Cane and Plaintiff's Ability to be Competitive in the Workforce

Plaintiff argues that all of the physicians found Plaintiff unable to walk without a medically prescribed cane and that the ALJ's decision did not adequately take into account the impact of that cane (Pl.'s Br. at 14). Furthermore, Plaintiff argues that he would be unable to retrieve or deliver materials with only one free hand, (Pl.'s Br. at 15), and that all of the jobs mentioned by the Vocational Expert demanded high production quotas. (Pl.'s Br. at 21).

However, the ALJ fully accounted for the use of a cane in Plaintiff's residual functional capacity determination and in the hypothetical question posed to the Vocational Expert. (R. 421). ALJ relied on Dr. Rustagi, who twice stated that Plaintiff had effective use of one extremity for carrying while using a cane. (R. 315, 333). ALJ prefaced questions to the Vocational Expert, "He requires occupations that allow for the use of a cane. . . ." (R. 479). Furthermore, nothing in the medical record showed any limitation for Plaintiff's ability to manipulate or finger objects as generally required by sedentary work. (R. 424). The medical record showed little limitation in Plaintiff's upper-body strength to suggest that he would be unable to lift the requisite ten pounds as defined in sedentary work. 20 CFR 404.1567(a), 416.967(a). On the contrary, the medical record showed that Plaintiff could lift at least twenty pounds. (R. 326).

24

Plaintiff further argues that pain and drowsiness caused by medication made him unable to perform at a competitive rate of 50-55 minutes out of every hour of an eight-hour work day. Plaintiff contends that the ALJ did not specifically provide an explanation as ordered by the Appeals Council on Plaintiff's difficulty concentrating. (Pl.'s Br. at 25).

The ALJ explained that there was no evidence in the medical record to show that Plaintiff was incapable of simple, routine repetitive tasks with little decision-making. (R. 424). The ALJ noted in his questions to the Vocational Expert that he's limited to simple, routine, repetitive tasks involving only, simple, work-related decisions and few workplace changes. (R. 479). The ALJ addressed the concerns of the Appeal Council by acknowledging Plaintiff's difficulty with concentration and pace and relaying that information to the Vocational Expert. The Vocational Expert took those limitations into account. Therefore, the ALJ did not ignore Plaintiff's use of a cane or problems with concentration related to pain medication, but appropriately considered these impairments in conjunction with the evidence as a whole.

## V.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. 42 U.S.C. § 405(g); s*ee also Morales,* 225 F.3d at 316; *Hartranft*, 181 F.3d, 360; *Doak*, 790 F.2d at 28. The Court finds that the failure of the ALJ to recognize Dr. Park's assessment as consistent with Dr. Wu's assessment, and contrary to Dr. Cirillo's assessment in regard to Plaintiff's ability to walk/stand for two hours, affects the substantial evidence upon which the ALJ based his decision that there were jobs in significant numbers in the national economy that Plaintiff could perform. By not crediting that a second doctor, in addition to Plaintiff's primary treating physician, Dr. Wu, also found Plaintiff unable to walk/stand for two hours, the ALJ's decision based on the hearing

where the Vocational Expert testified is called into question.

The ALJ's decision is not based on substantial evidence. 42 U.S.C. § 405(g). *See Morales,* 225 F.3d at 316; *Hartranft,* 181 F.3d at 360; *Sykes*, 228 F. 3d at 266 n. 9. The decision of the Commissioner is vacated.

### Order

This matter having come before the Court upon the appeal of Plaintiff Leedrue Hurt from the Commissioner of Social Security Administration's decision denying his application for Disability Insurance Benefits; and the Court having considered all submissions of the parties; and in light of the reasons stated above;

It is on this 25th day of July, ORDERED that the final decision of the Commissioner of Social Security is remanded for further proceedings.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.